CANTERBURY VS. HILL.

1. An inducement, (in an action, for words, charging perjury,) of the particular trial referred to, is not necessary to be inserted specially, in each several count in the declaration— such inducement being made in the commencement, and referred to generally, in the remaining counts, by the word, " aforesaid. "

2. So, a declaration in slander, upon words charging one with having sworn falsely, before a justice of the peace, referring, in each count, to the inducement in the commencement, by the words—"N. T. Esquire, aforesaid "—held, good.

3. Words, charging one with having " sworn a lie, on a trial, before Esquire T."—actionable, *per se*—are proof being made, that T. was a justice of the peace.

This action was trespass, on the case, in Bibb Circuit Court, charging Hill, the defendant in error, with the speaking of slanderous words of and concerning the plaintiff.

The declaration, after the usual formal commencement, charged, that before the time of filing the same, a certain controversy, under the attachment law, had been depending, before Nathan Tabor, esquire, a justice of the peace, in and for the County of Bibb, and State of Alabama, between Riley Kellum and Daniel Canterbury—the trial of which had been then lately had, before the said justice, in and for the County of Bibb ; and on such trial, the said Daniel Canterbury had been and was examined, as a witness, on oath, and had given his evidence for and on behalf of the said Daniel Canterbury—and the said Jesse Hill, well knowing the premises, but contriving, and wickedly and maliciously intending to injure the said Daniel Canterbury in his good name,

fame and credit, and to bring him into public scandal and disgrace, &c.—and to cause it to be suspected and believed that he was guilty of perjury; and to subject him to the pains and penalties, by the laws of the State made and provided in such cases," &c.—spoke and published of and concerning the said plaintiff, in reference to the aforesaid trial, these false and defamatory words, to wit: "You have sworn a lie, before Esquire Tabor, [meaning Nathan Tabor, Esquire, aforesaid,] in the trial, between you, [meaning the said Daniel Canterbury, and Riley Kellum;] and I, [meaning the said Jesse Hill,] can prove it."

The second count charged the words, in the following manner, to wit: "He, [meaning the said Daniel Canterbury,] has sworn a lie, before Esquire Tabor," [meaning Nathan Tabor, Esquire, aforesaid,] &c.

In the third count, the words were laid as follow: "You, [meaning the said Daniel Canterbury,] have sworn a lie, before Esquire Tabor, [*meaning Nathan Tabor, Esquire, as aforesaid,*] in the case of the trial of the right of property: and I, [meaning the said Jesse Hill,] can prove it. You, [meaning the said Daniel,] are perjured—you, [meaning the said Daniel,] have sworn a lie, in a trial between you and Riley Kellum, before Esquire Tabor, [*meaning Esquire Tabor aforesaid,*) &c.

The fourth count set out, that the defendant uttered and published of and concerning the plaintiff, these other false and defamatory words, to wit: "He, (meaning the said Daniel,) has sworn a lie, before Esquire Tabor, (*meaning Nathan Tabor, Esquire,*

4 s & p.                    29

*aforesaid, in the case of the trial of the right of property,*) and I can prove it.    He, (meaning the said Daniel,) is perjured.    He, meaning the said Daniel,) has sworn a lie, in a trial, between him and Riley Kellum, before Esquire Tabor, (*meaning Nathan Tabor, Esquire, aforesaid,*") &c.

To this declaration, the defendant plead the general issue, and a verdict and judgment were rendered, in his favor.

During the progress of the trial, the plaintiff proved, by Nathan Tabor, an acting justice of the peace, for Bibb County, that there had been a trial pending between the said plaintiff and one Riley Kellum; and that the defendant said of the plaintiff, in reference to that trial, " he, (the plaintiff,) has sworn a lie, on a trial between him and Riley Kellum, before Esquire Tabor—I can lay his oath aside, and will do it."

The Court, on objection, rejected this evidence—and ruled, that, to render the words actionable, the particular proceeding to which they referred, should have been proved, by the production of the original papers.    This opinion of the presiding judge was excepted to, and a writ of error taken.

*Freeman*, for the plaintiff in error, contended, that the words laid in the declaration, contained a substantive charge of perjury.    Words, are always to be taken in their usual popular import.—Starkie on Slander, 73; Ib. 281.

It is not incumbent on the plaintiff, to give color to the defendant's assertions: if intended by him, to inflict an injury upon the reputation of the plaintiff,

that intention will best be shewn, by the popular use of the words used.—1 Stewart, 138; Ib. 231.

Where words charge a perjury, it need not be shewn, whether the one charged, swore in a Court, where false swearing would be perjury: and, where words are in themselves, actionable, it is not necessary to set out the manner in which they were spoken.—12 Mass. R. 498.

Here the words charged, impute perjury, in a judicial proceeding. In the first count, we allege, that there were such judicial proceedings pending; and that they were so pending before a justice of the peace: and, in the ensuing counts, direct reference is made to the first. If then, proof follows this averment, it is sufficient.

*Clark,* contra.—Each count must stand by itself: and, in each laid in a declaration, every material matter, whether of inducement or averment, must be specially set out. Here, no one count, after the first, lays the necessary inducement. All refer to the first count. If this be sanctioned in practice, then the whole declaration is one count. The words only relate to matters before "'Squire Tabor." Who is 'Squire Tabor? Can this Court undertake to know him judicially? The words "'squire," and "justice of the peace," are surely not synonymous.—20 Johns. R. 340–4; 8 Ib. 109; 2 Nott & M'Cord, 364.

Again; there was no proof of colloquium.—9 Cowen, 30; 3 Starkie's Ev. 1143, 1546, note C.

TAYLOR, J.—Before investigating the main point in this case, it is necessary to dispose of the ques-

tion which has been made, as to the necessity of inserting the special inducement, that a suit had been tried, and the plaintiff examined as a witness, in each count.   It would seem to be reasonable, that the inducement should apply to the whole declaration : because, no matter how different the words may be, which are charged in the different counts, to have been spoken, they all may be referred to one trial. Accordingly we find in Chitty's forms,[a] this special inducement laid previous to the general statement of the defendant's malicious intent, and each succeeding count beginning with charging the words alleged to have been spoken, and referring to the inducement thus, "did publish a certain other false, scandalous, malicious and defamatory libel, of and concerning the said A. B., and of and concerning the said action which had been depending as aforesaid," &c.

*2 Chitty's P. 296.

In the inducement in the declaration, in this case, it is alleged, that "a certain controversy under the attachment law, had been depending before Nathan Tabor, Esquire, a justice of the peace in and for the county of Bibb, and State of Alabama, between Riley Kellum and Daniel Canterbury, the trial on which had been then lately had before the said justice, in and for the county of Bibb, and on such trial the said Daniel Canterbury had been and was examined on oath, and had given his evidence, as a witness," &c.

In each of the counts it is alleged, that the defendant had charged the plaintiff with having sworn falsely, in different words, upon the trial between Kellum and Canterbury, before esquire Tabor, "meaning Nathan Tabor, esquire, aforesaid."   It is contended, by the counsel for the defendant, that

here is no sufficient averment, that Nathan Tabor was a justice of the peace. It is believed, however, to be fully sufficient: the words " aforesaid" referring necessarily to the inducement, which alleges, that Nathan Tabor, before whom the trial was had, is a justice of the peace for Bibb county, and the words, " Nathan Tabor, esquire, aforesaid," must have been intended to mean, Nathan Tabor, a justice of the peace, as aforesaid; and can be understood in no other way. Every substantial allegation is contained in each of the counts, and formal defects, if they existed, could not be noticed here.

The main enquiry is, were the words which were proposed to be proved, and which are charged in the fourth count, but which the Court would not permit to be given in evidence to the jury, without the production of the original papers, actionable *per se*, or with the addition of proof, that Nathan Tabor was a justice of the peace, which, it is admitted by the bill of exceptions, was made.

The words are, " he (the plaintiff) has sworn a lie, on a trial between him and Riley Kellum, before esquire Tabor; I can lay his oath aside, and will do it."

It is laid down in *Starkie*, on slander, page 78, that to say of another, that he is foresworn before a justice of the peace, is actionable; or before such a person, naming him, provided it can be shown, with certainty, that he is a justice of the peace.

It is presumable, that there was something in the cases going to show, that the words were spoken relative to an oath administered by the justice, in the discharge of his official duties. In this case such is alleged to have been the direct charge of the defend-

ant against the plaintiff. The words are, that he had sworn a lie, on a trial between him and Kellum, before esquire Tabor. This esquire Tabor was proved to be a justice of the peace, therefore it would be a most strained construction to presume, that the defendant alluded to something else, than the trial of a suit before the justice, of which he had jurisdiction. We can make no such presumption, but must receive the words in their ordinary acceptation.

The words which the plaintiff offered to prove, with the additional evidence, that Tabor was a justice of the peace, were actionable within themselves.

It is unnecessary to consider the correctness of the decision requiring the production of the original papers as the best evidence that a suit had been pending before the justice.

The judgment is reversed, and the cause remanded.