## WM. ALVEY *vs.* IDA M. HARTWIG.

*Liability of Father for Support of his Children—Action by Wife After Divorce Against Husband to Recover for the Maintainance of Children in the Wife's Custody.*

If there be one good count in a declaration, a general demurrer to it must be overruled.

A father is primarily liable for the support of his infant children, and he is not released from this obligation by the fact that the custody of the children was awarded to his wife under a decree by which she obtained a

divorce from him, as a non-resident defendant not personally summoned.

Where a divorce *a vinculo* from a husband after notice by publication, and the custody of infant children is granted to a wife, by a decree which makes no provision for their support, she is entitled to recover from the defendant, in an action at law, the cost of their maintenance; and it is not necessary that this right should be asserted in the divorce proceedings.

*Decided June 24th, 1907.*

Appeal from the Circuit Court for Washington County (HENDERSON, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Wm. J. Witzenbacher* and *Charles Alvey*, for the appellant.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellee.

ROGERS, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Washington County. This case arose out of a foreign attachment against the defendant. The facts set forth in the record show that the plaintiff and defendant were married in June, 1886, and in January, 1897, the defendant is alleged to have deserted his family, consisting of his wife and two minor children; that sometime prior to the 4th day of March, 1904, the plaintiff filed a suit for a divorce *a vinculo* against the defendant in the Circuit Court for Baltimore City, using the process of publication, the defendant then being a non-resident; that plaintiff's bill of complaint specifically prayed for a divorce *a vinculo* and the custody of the children, and did not specifically pray for any other relief; that on the 4th day of March, 1904, the Circuit Court of Baltimore wherein said suit was brought, passed a final decree in the cause, granting unto the plaintiff a divorce *a vinculo*, and awarding her the care and custody of the two children, but was silent as to their maintenance; that before,

and since said divorce, she has supported said children, and expended certain sums for necessaries for them; that the defendant, although requested failed and neglected to support said children, and has refused to pay to the plaintiff the amount so expended by her.

The present proceeding is a suit between *the parties to the decree of divorce*, and the theory of the plaintiff is that by reason of the fact that the plaintiff has supported the children of the marriage, an implied contract arose in favor of plaintiff against the defendant to reimburse the expenses incurred thereby by the plaintiff after the date of the divorce. The contention of the defendant is that the law does not imply an obligation on the part of the defendant, to pay the plaintiff, for her support and maintenance of the minor children of the marriage, where she has obtained a divorce from him and has in the decree, been awarded the care and custody of such children; and the decree is silent as to the maintenance thereof; that the right of the parent to the services of the children and the obligation of maintenance of the same, devolving upon the parent are reciprocal rights and obligations.

As this case presents a novel and interesting question for this Court's determination, and will no doubt be of interest to the profession at large, we will give the proceedings in detail as presented by the record.

This suit is brought to recover the sum of twelve hundred and twenty-three 99-100 dollars due and owing from the defendant to the plaintiff.

I. For that the defendant is the father of two infant children, Richard Henry Alvey and Mary Virginia Alvey, and as such father is and always has been liable for their maintenance, support and education; and that the plaintiff, Ida M. Hartwig, was formerly the wife of said William Alvey, and is the mother of said children; and that about ten years ago, the said William Alvey wrongfully, without just cause, abandoned the plaintiff, who was then his wife, and abandoned his said infant children, and that since that time, he has utterly failed and neglected to contribute anything whatever towards the support of his infant children, though requested so to do; and that the plaintiff obtained a divorce from the said William

Alvey on or about the 4th day of March, 1904, the said divorce being granted by the Circuit Court of Baltimore City, the proceedings in said cause being had by publication against the defendant in the manner provided by law, and without any personal service of summons upon the said defendant, the said defendant being then a non-resident of the State of Maryland, and that the said Circuit Court of Baltimore City awarded the custody of said two infant children to the plaintiff, but that said Court was without jurisdiction at the time to require the defendant to pay for the support and maintenance of said infant chldren; and that the plaintiff, ever since the said William Alvey abandoned her has supported said children, and has expended large sums of money for their maintenance and education, and that the plaintiff has demanded payment of such sums but the defendant has refused to pay the same, and that the defendant is fully able to pay for the maintenance and support of said children, and that the defendant is liable to the plaintiff for the support of said children during all of said time, both before and after said decree of divorce, and that the amounts expended by the plaintiff were for necessaries reasonably suited to the needs and conditions of said children.

2. And for money payable by the defendant to the plaintiff for money paid by the plaintiff for the defendant at his request.

To this a demurrer was interposed, which was overruled. The defendant then filed the following plea.

For plea to the first count of the plaintiff's declaration the defendant, by his attorney, says:

That in and by the petition or Bill of Complaint, filed by the plaintiff in the Circuit Court of Baltimore City, in the cause wherein the plaintiff obtained a divorce from the defendant, the plaintiff prayed that the plaintiff be divorced *a vinculo matrimonii* from the defendant, and also that the plaintiff have the guardianship and custody of the infant children of the marriage between the plaintiff and defendant, viz: Richard H. Alvey and Mary Virginia Alvey,—and thereafter on the 4th day of March, 1904, the Circuit Court of Baltimore City passed, in the cause wherein the said petition or Bill of Complaint was filed, as aforesaid, a decree in the words following to-wit:

"This cause standing ready for hearing and being duly submitted, the proceedings were by the Court read and considered.

It is thereupon this 4th day of March, A. D., 1904, by the Circuit Court of Baltimore City, adjudged, ordered and decreed, that the said Ida May Alvey, the above named Complainant be and she is hereby divorced *a vinculo matrimonii* from the defendant, and the care and custody of the infant children, Richard Henry Alvey and Mary Virginia Alvey, be awarded the plaintiff. And it is further ordered, that the defendant pay the costs of this proceeding.''

And the plaintiff has not expended any of the money, herein sued for, for maintenance and support of said children prior to the 4th day of March, A. D., 1904.

And for a second plea to the first count of the plaintiff's declaration, the defendant, by his attorneys, says:

That in the cause filed in the Circuit Court of Baltimore City, wherein the plaintiff obtained a divotce from the defendant, as set forth in the plaintiff's delaration, the plaintiff filed her petition or Bill of Complaint in the words following:

1. That on the 3rd day of June, 1886, she was married to her husband, William Alvey, in the City of Baltimore, with whom she resided in the cities of Washington and Baltimore, until the 18th day of January 1897.

2. That though the conduct of your oratrix towards her husband, the said William Alvey, has always been kind, affectionate and above reproach, the said William Alvey has without any just cause or reason, abandoned and deserted her, and has not contributed to her support, or to the support of their children, and that such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation.

3. That she had, by said marriage, two children, both of whom are still alive, and are infants, viz: Richard Henry Alvey, age 14 years, and Mary Virginia Alvey, age 12 years, and both of whom are living with her.

4. That she has lived continuously in Maryland for the past seven years.

To the end therefore,

1. That your oratrix may be divorced *a vinculo matrimonii* from the said William Alvey.

2. That year oratrix may have the guardianship and custody of the infant children of said marriage, viz: the said Richard Henry Alvey, and Mary Virginia Alvey.

3. That your oratrix may have such other and further relief as her case may require.

May it please your Honor, to grant unto your oratrix the order of publication, giving notice to the said William Alvey, who is a non-resident of this State, whereabouts unknown, of the object and substance of this bill, and warning him to appear in this Court, at some certain day to be named therein, and answer the premises and abide by and perform such decree as may be passed therein.

And thereafter on the 4th day of March, 1904, the said Circuit Court of Baltimore City passed, in the cause wherein the said petition or bill of complaint was filed, as aforesaid, by the plaintiff, a decree in words following, towit: And the decree of the Circuit Court of Baltimore City is repeated.

And for a third plea to the first count of the plaintiff's declaration the defendant by his attorneys, says:

That in and by the petition or bill of complaint filed by the plaintiff in the Circuit Court of Baltimore City, in the cause wherein the plaintiff obtained a divorce from the defendant, the plaintiff prayed that the plaintiff be divorced *a vinculo matrimonii* from the defendant and also that the plaintiff have the guardianship and custody of the infant children of the marriage between the plaintiff and defendant, viz: Richard H. Alvey and Mary Virginia Alvey, and thereafter on the 4th day of March, 1904, the Circuit Court of Baltimore City, passed, in the cause in which the said petition or bill of complaint of the plaintiff was filed as aforesaid, a decree divorcing the plaintiff *a vinculo matrimonii* from the defendant, and awarding the care and custody of the infant children, Richard Henry Alvey and Mary Virginia Alvey to the plaintiff.

And the plaintiff has not expended any of the money, herein sued for, for maintenance and support of said children prior to the 4th day of March, 1904.

To these pleas the plaintiff demurred and the Court sustained the demurrer. After which the defendant filed the general issue pleas, upon which issue was joined, and after trial by jury, and a verdict for $1,125, and a judgment on verdict for $1,125, the defendant appealed to this Court.

The record presents no bills of exceptions so that it does not appear from this record what any of the testimony below was, and we are not informed from the record whether the judgment was rendered on matters offered under the first count, the legal sufficiency of which is attacked and to which

certain special pleas had been overruled, or under the second count, the sufficiency of which was conceded.

The purpose of the appellant we presume in presenting his case in this manner is to have this Court review the action of the lower Court in overruling the demurrer to the declaration, and sustaining the demurrer to the special pleas, which were filed only to the first count of the declaration. The Code (1904, Art. 5, sec. 17) provides as follows: "Nor shall any judgment or verdict be reversed, if there be one good count in the declaration," and again for aught we know the judgment might have been rendered by reason of matters offered under the second count, in which event any error of the lower Court in reference to the first count or the pleas thereto would be without prejudice to the defendant, and therefore not good ground for reversal. *Terry* v. *Bright*, 4 Md. 430; *Huffer* v. *Miller*, 74 Md. 454.

In *Terry* v. *Bright*, this Court had before it for review the sufficiency of the pleadings in an action of slander. The declaration consisted of four counts, and it was contended that at least some of them were bad. The Court held that the first count was good and that therefore under the statute cited it was not necessary to consider the other counts.

In *Huffer* v. *Miller*, the Court says : "We do not deem it necessary to discuss the question of the sufficiency of the counts, because the judgment below would not be reversed, even if they were defective. The third count in the declaration is admitted to be good, and a judgment will not be reversed for any defect in form or substance in any count in the declaration, if there be one good count."

In the present case, if the demurrer be treated as to the whole declaration, then it was necessarily overruled, because of the one good count. *Willing* v. *Bozman*, 52 Md. 63 ; *Spencer* v. *Trafford*, 42 Md. 15 ; *Scott* v. *Leary*, 34 Md. 401.

The Court overruled the defendant's demurrer to the first count in plaintiff's declaration and we have just shown, even if wrong in so doing, it would not be reversible error provided there was one good count. Surely then an error in sustain-

ing a demurrer to a plea to that one count is not reversible. We think the Court below was correct in its rulings both in overruling the defendant's demurrer to the plaintiff's amended declaration and sustaining the plaintiff's demurrer to the defendant's plea.

As the duty of a father to support his minor children lies at the root of the controversy in this case we will examine the law on that question first, for there is a difference of opinion in the Courts of various States as to this.    In some the common law is interpreted as casting the burden of support upon the parents equally, and some casting it primarily upon the father, and only secondarily upon the mother.    CHANCELLOR JOHNSON in *Thompson et al.* v. *Dorsey et al.*, 4 Md. Ch. Dec. 151, uses this language : "A father is bound to educate and maintain his infant children, and if another person perform this natural duty for him with his knowledge and consent, the father is liable to pay a reasonable sum to such person."    CHANCELLOR BLAND in *Addison* v. *Bowie*, 2 Bl. 585, says, "A father is bound to maintain his infant children, if able."

By the Act of 1896, chapter 73, and 1904, chapter 44, the wilful neglect to provide for the support of a minor child is also a misdemeanor punishable by fine and imprisonment in this State.

But in this case the appellant claims that even if that be the law in Maryland,—and we think it is beyond dispute—that he, the appellant, is released from this obligation to support his infant child for the reason that his wife has obtained a divorce from him and has been granted the custody of said child.

Whatever may be the decisions in other States, and while there are undoubtedly conflicting opinions, we cannot give our assent to the position taken by the appellant on this point.

Many Courts of high authority have declared most emphatically that it is the duty of the father to provide reasonably for the maintenance of his minor children, and that this liability is in nowise affected by the fact that the custody of said children may have been taken away from him by the decree of a Court of competent jurisdiction.    This primary obligation arises not

alone from the husband's common law right to his wife's estate, but rather from his natural headship of the family, and upon his being by nature and the present constitution of society the breadwinner and provider. The law also gives him the primary right to his children's services and earnings, which it could not in fairness do if the mother were in the first place equally bound for their support. There may be and doubtless are many cases where the right to the custody and services of the children are taken away from the father because of his misconduct. His natural right to this custody and these services is forfeited by his misconduct, and surely if his misconduct works a forfeiture of his rights to custody and earnings, he ought not to be absolved from his natural and usual duty of supporting them. To allow it to bring about any such result, would simply be allowing the father to take advantage of his own wrong, for all a father would have to do to avoid his natural obligation to his children would be to desert his family, conduct himself in such a way as to show that he is an unfit person to have the custody of his children, and then, when on account of his own wrongful doings and unfitness, the Court takes the custody of the children away from him, and awards it to the mother, it relieves him of the obligation which the law of nature and the law of the land places upon him.

CHANCELLOR KENT says : "Wants and weakness of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person." In *Pretzinger* v. *Pretzinger*, 45 Ohio St. 452, 15 N. E. Rep. 473, this view is sustained. In that case the wife was divorced from her husband by reason of his misconduct, and she was awarded the custody of their minor child. The Court also gave her alimony for her own support, but in the decree for divorce made no allowance for the child's maintenance. For several years after the divorce she furnished the child with board and clothing. When the divorce was granted the father was insolvent, but at the time of the trial he was solvent, and able to support the child. She brought an action at law against him ; and the Ohio Court, after a full discussion,

held that by the plainest principles of justice she was entitled
to recover.  The Court says : "The duty of the father to pro-
vide reasonably for the maintenance of his minor children, if
he be of ability, is a principle of natural law.  This natural
duty is not to be evaded by the husband so conducting him-
self as to render it necessary to dissolve the bonds of matri-
mony and give the mother the custody and care of the infant
offspring.  It is not the policy of the law to deprive children
of their rights on account of the dissensions of their parents to
which they are not parties, *or to enable the father to convert his
own misconduct into a shield of parental liability.*"  Further on,
the Court says : "There is evidently no satisfactory reason for
changing the rule of liability when, through ill-treatment or
other breach of marital obligation, the husband renders it nec-
essary for a Court of justice to divorce the wife and commit to
her the custody of her minor children.  If under such circum-
stances, upon the allowance of alimony with custody of chil-
dren, the Court omits to make an order for the children's
maintenance, the father's natural obligation to support them is
of none the less force."

In *Gibson* v. *Gibson,* 18 Wash. 489, 51 Pac. Rep. 1042, is
another excellent illustration.  In that case it was argued, be-
cause the decree making the award, contained no provision
that the husband shall pay for their support, that therefore, the
obligation to support them is transferred from him to the
mother.  The Court uses the following language : "It vio-
lates our sense of justice to allow a father to bring his own
wrongs as an excuse for relieving himself from an obligation.
Presumably the custody of the child is taken from him because
he is not worthy of its care and custody, and this doctrine, in
effect, releases from an obligation the unworthy parent and
imposes an additional burden upon the worthy one."

In *Buckminster* v. *Buckminster,* 38 Vt. 255, where a divorce
had been granted, it was held that the Court granting the di-
vorce had authority later, in subsequent proceeding, to give
further allowance for the support of the minor children,  The
Court said that the decree giving the care of the children to

the mother, did not discharge the father from his natural obligation to contribute reasonably to their support.   Again in *Plaster* v. *Plaster*, 47 Ill. 290, the same rule is laid down, and it was distinctly held that the decree dissolving the marital relation and giving custody of the children to the mother because of the unfitness of the father, did not impair the obligation of the father to support the children.   *Stanton* v. *Wilson*, 3 Day, 37-56 ;  *Holt* v. *Holt*, 42 Ark. 495 ;  *Conn* v. *Conn*, 57 Ind. 323.

We may, therefore, we think, take it as well settled in Maryland that as to third persons and as between husband and wife, the father's responsibility is primary and the mother's secondary, and that, no other facts or circumstances intervening, the mother can compel the father to provide for his children to the relief of herself.

The plaintiff claims that as the divorce was granted upon a publication, and the Court had no right or power to decree the support of the children *in personam* against the husband, his rights are precisely the same as if no provision had been made for the custody of the children, while the defendant claims, first, that the plaintiff's rights, if any, must be asserted in the original equity proceedings, or that if she originally had any remedy at law, she is estopped from asserting it by reason of that portion of the decree awarding custody to the mother. Of the various cases cited by the plaintiff the only one almost precisely like the one at bar is *Pretzinger* v. *Pretzinger, supra*, recovery at law where the decree awarded the custody of the children to the wife, but these are based upon the doctrine of estoppel.   As *Husband* v. *Husband*, 67 Ind. 583; *Ramsey* v. *Ramsey*, 121 Ind. 215; *Brown* v. *Smith*, 19 R. I. 319; 33 Atlantic 466; *McNees* v. *McNees*, 97 Ky. 152; 30 S. W. Rep. 207.   And some hold that where the father has been deprived of their custody and society, without fault of his own, he is not liable.   *State* v. *Philips*, 39 At. Rep. 453;  *Glynn* v.*Glynn*, 94 Me. 465, 48 Atlan. 105;  *Foss* v. *Hartwell*, 168 Mass. 66; *Finch* v. *Finch*, 22 Conn. 411.   While several of the cases cited by the defendant would appear to give color to the plain-

tiff's right to recover.   *Foss* v. *Hartwell*, 168 Mass. 66; *Finch* v. *Finch*, 22 Conn. 411; *Fulton* v. *Fulton*, 52 Ohio St. 229; *Burritt* v. *Burritt*, 29 Barb. 124; *Zilley* v. *Dunwiddie*, 40 L. R. A. 579; 98 Wis. 428; *Ramsey* v. *Ramsey*, 121 Ind. 215. In several of these very cases it is held that there can be a recovery at law, where there is no estoppel, and where there is either an express or implied contract to pay for support.

As to the question of estoppel, how far can it be said to apply to this cause, in which it is alleged there has been no personal service upon the defendant in the divorce case?   If it is conceded that that fact makes difference, then the weight of authority is against the plaintiff's contention.   As we view it, if the defendant had been summoned in the divorce case, it would be clear that the plaintiff would be barred in the case at bar.   Then the question naturally arises does the fact of service by publication make any difference?  This is not left for us to answer, but has already been answered by our predecessors, in *Garner* v. *Garner*, 56 Md. 127, where this Court held that no decree *in personam* in a divorce case, where notice is by publication, can be validly passed.   It follows, therefore, that the plaintiff could not have obtained a decree against her husband for the support of the children, in the original divorce case. Our statute gives the Court power to decree the custody of the children and also to decide who shall maintain them, these *separate* and *distinct powers*, and the decree of custody and guardianship does not carry with it any necessary implication of support.

The doctrine of estoppel is that as between parties to an action each is bound by orders or decree passed with reference to subject matters over which the Court had jurisdiction, but because the Court may have been silent on some subjects, it will not be presumed to have gone into them all, and intended to pass judgment on points upon which it was silent, and especially would this be true where the decree of divorce was based upon publication, and where the Court which granted the divorce could not by any possibility have had jurisdiction to compel the father to make an allowance for the support of

the children. Courts do. not pass decrees merely declaring the rights of parties unless the Court is able to effectally enforce such rights. In *Mills* v. *Green*, 159 U. S. 653, the Court says: "The duty of this Court, as of every other judicial tribunal, is to decide actual controversies *by a judgment which can be carried into effect* and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue before it." In *Cook* v. *Cook*, 56 Wis. 195, a wife sued her husband in Wisconsin for divorce, alimony and allowance. The defendant set up as a defense a proceeding in Michigan, by which he had obtained a divorce from his wife. It was argued that as the Michigan decree was silent on the question of alimony or allowance, that the wife was thereby barred from setting up such claims in any subsequent proceedings. It was replied to this, however, on behalf of the wife, that the decree in Michigan was granted after a publication, and the Court held that under such circumstances it could not constitute a bar, and used substantially the following language on page 217. The Michigan judgment is silent as to alimony and allowance. It was a judgment *in rem*. It severed the marital relation, but made no allowance for support. To give such a judgment the effect of barring the wife is to enlarge its provisions, and to incorporate in it what the Michigan Court had no power to adjudge. The decision, therefore, was that the decree had no effect upon the wife.

If the Ci cuit Court of Baltimore City had been asked to adjudge in geneal terms that the husband was liable for the support of the children, the presiding Judge would certainly have said that this would be a mere idle declaration of a right which the Court was powerless, under the circumstances to enforce, and its silence on that point would only be indicative of want of power and not of an exercise of judgment. The real basis for the doctrine of estoppel in such cases is, that the Court has exercised its discretionary power, and no other Court except upon appeal, can change that discretion, but where it is manifest that it has not exercised any discretion for

the reason that it had no power to do so, the same conclusion will not follow.

In the many cases cited by the appellant, there was the right in the Court to pass upon the question of support of children, if the wife had chosen to invoke it, whereas in Maryland, as we have shown already (*Garner* v. *Garner*, *supra*), the right did not exist in the divorce case. The answer to this reasoning is that having chosen her forum the plaintiff was bound by its decree as final, and that as she was not obliged to ask for a divorce her doing so in a forum incapable of giving her adequate relief was her own voluntary act, by consequence of which she should be bound. We cannot assent to this conclusion. If a husband has deserted his wife and gone to live in foreign jurisdiction she may be unable to follow him, or be ignorant of his whereabouts, or she may have no rights for some years in a foreign forum by which time a husband might again depart. In the meantime she is entitled, as best she may, to rid herself of the bond of marriage, and to have the children protected by having some one in legal control of them. To hold that under such circumstances a woman is helpless, and that an effort to protect herself and children will result in freeing a husband forever from legal obligations to support his children, would be putting a premium upon wrong, and is unnecessary, unwise, and not supported by authority.

It follows from what we have said that the judgment below must be affirmed.

*Judgment affirmed with costs to the appellee above and below.*